## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL E. KEELING, | : | Civil No. 4:18-CV-02195 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Judge Jennifer P. Wilson |
| | : | |
| JOHN WETZEL, *et al.*, | : | |
| | : | |
| Defendants. | : | Magistrate Judge Joseph F. Saporito Jr. |

## MEMORANDUM

This is a prisoner civil rights case that is currently before the court on Defendants' motion to dismiss for failure to state a claim upon which relief may be granted; a report and recommendation from United States Magistrate Judge Joseph F. Saporito Jr., which recommends granting the motion; and objections to the report and recommendation filed by Plaintiff Michael E. Keeling ("Keeling"). (Docs. 48, 57, 62–63.)  For the reasons that follow, the report and recommendation is adopted in part and rejected in part, and the motion to dismiss is granted in part and denied in part.

### BACKGROUND AND PROCEDURAL HISTORY

Keeling initiated this case through the filing of a complaint on November 13, 2018.  (Doc. 1.)  The complaint alleges a series of civil rights violations by staff members at SCI Dallas, the prison in which Keeling was incarcerated at all relevant times.  First, the complaint alleges that staff at SCI Dallas improperly changed Keeling's mental health classification from B to C and that Defendants

1

Bach, March, Malishak, Lopuhovsky, and Rimehouse subsequently withheld information as to which staff member authorized that change and why the change was made.  (*Id.* at 13–14.)[1]  Second, the complaint alleges that Defendants Depireo, Kaye, Verbyla, Josefowicz, Marsico, and Mahally violated Keeling's right to equal protection by denying him a single cell.  (*Id.* at 14–16.)  Third, the complaint alleges that Defendants Josefowicz and Bohinski failed to protect Keeling from violence by Keeling's cellmate.  (*Id.* at 16–19.)  Fourth, the complaint alleges that Defendant Bohinski retaliated against Keeling based on grievances Keeling had filed by moving him from cell block F to cell block B on or about May 17, 2017.  (*Id.* at 17.)  Fifth, the complaint alleges that Defendants Piskorik and Pawling violated Keeling's rights by subjecting him to more drug screenings than he should have been subjected to under the prison's random drug screening policy.  (*Id.* at 19–20.)  Sixth, the complaint alleges that Keeling was subjected to cruel and unusual punishment in violation of the Eighth Amendment because staff at SCI Dallas served food on Styrofoam trays that did not fit through the food slots on the prison's cell doors, causing the staff to tip the trays sideways and mix the food on the trays together.  (*Id.* at 19–20.)  Based on the alleged civil rights violations, the complaint seeks damages of $25,000 from each Defendant.

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

Defendants Hoffman and Rimehouse moved to dismiss the complaint on August 7, 2019.  (Doc. 22.)  This court adopted Judge Saporito's report and recommendation and granted the motion to dismiss on May 15, 2020, dismissing all claims against Rimehouse and Hoffman.  (Doc. 39.)

The remaining Defendants (Wetzel, Mahally, Bach, March, Malishak, Lopuhovsky, Bohinski, White, Josefowicz, Depireo, Kaye, Verbala, Demming, Piskorik, Pawling, and Eyer) moved to dismiss the complaint on June 8, 2020. (Doc. 48.)  Judge Saporito addressed the motion in a report and recommendation on January 13, 2021, recommending that the motion be granted.  (Doc. 57.)

In the report and recommendation, Judge Saporito first concludes that Keeling's mental health classification claim fails because an inmate does not have a constitutional right to a particular mental health classification and prison staff failing to disclose information as to an inmate's mental health classification does not constitute a violation of civil rights.  (*Id.* at 5–6.)  Second, Judge Saporito concludes that Keeling's retaliation claim should be dismissed because the alleged transfer from one cell to another does not constitute an adverse action sufficient to state a retaliation claim upon which relief may be granted.  (*Id.* at 9.)  Third, Judge Saporito concludes that the failure to protect claim should be dismissed because the complaint does not allege that there was a specific threat of violence by Keeling's cellmate or that there was any prior history of physical violence between

3

the two individuals.  (*Id.* at 11–12.)  Therefore, Judge Saporito concludes, the

Defendants "had no reason to know prior to the incident that the cellmate was

about to assault Keeling."  (*Id.* at 12.)  Judge Saporito further concludes that any

derivative claim for failure to protect against Defendant White based on Defendant

White's alleged failure to investigate should be dismissed because the complaint

does not allege that White was personally involved in any violation of Keeling's

civil rights.  (*Id.* at 13–15.)  Fourth, Judge Saporito concludes that Keeling's claims

based on drug screenings should be dismissed because "state prison regulations,

such as the state department of corrections drug screening policies, do not

constitute federal law, and therefore such claims are not cognizable under 42

U.S.C. § 1983."  (*Id.* at 15.)  Fifth, Judge Saporito concludes that the Eighth

Amendment claim based on the manner in which food was served should be

dismissed because Keeling "does not allege that he suffered anything more than

minor, temporary discomfort," which is not a cognizable claim under the Eighth

Amendment.  (*Id.* at 16–17.)  Sixth, Judge Saporito concludes that all claims

against Defendants Demming and Eyer should be dismissed as the complaint does

not allege any conduct by those defendants.  (*Id.* at 18.)  Finally, Judge Saporito

concludes that further amendment of the complaint would be futile and accordingly

recommends that the complaint be dismissed without further leave to amend.  (*Id.*

at 18–19.)

4

Keeling filed objections to the report and recommendation on March 24, 2021 and March 30, 2021.  (Docs. 62–63.)  Defendants filed a brief in opposition to the objections on April 7, 2021.  (Doc. 64.)  No reply brief has been filed, and the time for doing so has expired.  Accordingly, Keeling's objections have been fully briefed and the court will consider them below.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.

## STANDARD OF REVIEW

When a party objects to a magistrate judge's report and recommendation, the district court is required to conduct a de novo review of the contested portions of the report and recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). The district court may accept, reject, or modify the magistrate judge's report and recommendation in whole or in part.  28 U.S.C. § 636(b)(1).  The district court may also receive further evidence or recommit the matter to the magistrate judge with further instructions.  *Id.*  "Although the standard is de novo, the extent of review is committed to the sound discretion of the district judge, and the court may rely on the recommendations of the magistrate judge to the extent it deems proper."

*Weidman v. Colvin*, 164 F. Supp. 3d 650, 653 (M.D. Pa. 2015) (citing *Rieder v. Apfel*, 115 F. Supp. 2d 496, 499 (M.D. Pa. 2000)).

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conclusory allegations of liability are insufficient" to survive a motion to dismiss. *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678–79). To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

In determining whether to dismiss a complaint brought by an unrepresented litigant, a court must interpret the complaint liberally. *Sause v. Bauer*, 585 U.S. __, 138 S. Ct. 2561, 2563 (2018). The complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Nevertheless, unrepresented litigants "still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

DISCUSSION

### A. Keeling's Equal Protection Claim Is Dismissed

Keeling raises several objections to the report and recommendation, which the court will consider seriatim.  His first objection is that Judge Saporito failed to consider whether his equal protection claim should be dismissed.  (Doc. 62, p. 1.) Keeling asserts that if his equal protection claim receives proper consideration, the court will conclude that it states a claim upon which relief may be granted.  (*Id.* at 3–8.)

Defendants characterize Keeling's argument as an attempt to "pivot his claim" in an attempt to state an equal protection claim that was not raised in the complaint.  (Doc. 64, p. 3.)  Even assuming the claim can be read as an equal protection claim, however, Defendants argue that it fails to state a claim upon which relief may be granted because the complaint does not allege that any of the Defendants were personally involved in the alleged equal protection violation and does not allege intentional discrimination by Defendants.  (*Id.* at 5.)

The court will overrule Keeling's objection.  Although Keeling is correct that the report and recommendation fails to consider whether his equal protection

claim should be dismissed, the court has conducted its own review of the equal

protection claim and concludes that it fails to state a claim upon which relief may

be granted.

Keeling's equal protection claim is based on a class of one theory. *See Vill.*

*of Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000).  To state an equal

protection claim upon which relief may be granted under a class of one theory, a

plaintiff must allege that "(1) the defendant treated [the plaintiff] differently from

others similarly situated, (2) the defendant did so intentionally, and (3) there was

no rational basis for the difference in treatment." *Newark Cab Ass'n v. City of*

*Newark*, 901 F.3d 146, 156 (3d Cir. 2018) (quoting *Hill v. Borough of Kutztown*,

455 F.3d 225, 239 (3d Cir. 2006)).

Here, Keeling alleges that he has been denied equal protection because he

has been denied a single cell while 133 similarly situated inmates have been given

single cells.  (Doc. 1, p. 14.)  Keeling alleges that Defendants Depiero and Kaye

refused to provide Keeling with the criteria that the prison used to place those 133

inmates into single cells.  (*Id.* at 15.)  Keeling alleges that Defendant Verbyla told

him that he would first need to make a request to his unit manager before he could

be given a single cell.  (*Id.*)  Keeling then alleges that his unit manager, Defendant

Josefowicz, told him that he could not be placed in a single cell "without meeting

the Z-Code[2] criteria." (*Id.*)  Finally, Keeling alleges that Defendant Marsico

violated his right to equal protection by not placing Keeling on a waiting list for a

Z-Code single cell and that Defendant Mahally violated his rights because he

allowed the 133 similarly situated inmates in the prison to be housed in single

cells.  (*Id.*)

　　　None of these allegations support a reasonable inference that the Defendants

intentionally discriminated against Keeling or that there was no rational basis for

treating Keeling differently from other prisoners.  Indeed, it appears from the

allegations in the complaint that Keeling was denied a single cell because he did

not meet the criteria for Z-Code status and not because the Defendants were

intentionally discriminating against him.  Accordingly, the court will overrule

Keeling's objection and dismiss the equal protection claim.

## B. Keeling's Claim Arising from His Mental Health Classification Is Dismissed

　　　Keeling's second objection is that Judge Saporito misconstrues his claim

regarding his mental health treatment.  (Doc. 62, p. 2; Doc. 63, p. 3.)  Keeling

asserts that his claim, when read properly, alleges not a wrongful change in his

---

[2] The court takes judicial notice of the fact that a "Z-Code" is a term within the Pennsylvania Department of Corrections referring to assignment to a single cell.  *See, e.g.*, *Lane v. Pa. Dep't of Corr.*, No. 3:14-CV-00991, 2015 WL 5016512, at *3 (M.D. Pa. June 22, 2015), *report and recommendation adopted*, No. 3:14-CV-00991, 2015 WL 5020568 (M.D. Pa. Aug. 20, 2015).

mental health classification, but rather a denial of mental health care for a period of five years.[3] (Doc. 62, p. 2; Doc. 63, p. 3.)

Keeling's objection is belied by the allegations in his complaint. The complaint makes clear that Keeling's mental health treatment claim is based on the change in his mental health classification and the Defendants' refusal to provide information to Keeling on that change. (*See* Doc. 1, pp. 13–14.) Although Keeling alleges that he has been "literally blackballed from psychological review from at least April 2009 till [sic] March 29, 2017," *see id.* ¶ 37, the context of the complaint indicates that this allegation refers to prison staff's failure to conduct an evaluation before changing Keeling's mental health classification, and not to a denial of mental health care. (*See id.* ¶¶ 36–37 (alleging that "[t]here is a standard and practice policy mandating a personal evaluation before a change of patients [sic] stability level" and that "Plaintiff had been literally blackballed from psychological review from at least April 2009 till [sic] March 29, 2017.") Accordingly, this objection is overruled and the court will dismiss Keeling's claim arising from his mental health classification.

---

[3] Keeling also argues that the court should reconsider the earlier dismissal of his claims against Defendants Rimehouse and Hoffman. (*See* Doc. 63, p. 5.) The court has already denied a motion for reconsideration as to those claims and will not consider Keeling's additional and untimely argument for reconsideration.

### C. Keeling's Retaliation Claim Is Dismissed

Keeling's third objection is that his retaliation claim should not be dismissed because there was close temporal proximity between his protected conduct and prison staff moving him from one cell block to another and because Defendant Bohinski moved Keeling in retaliation for Keeling filing grievances.  (Doc. 63, pp. 6–7.)

Keeling's objection is without merit.  To state a claim for retaliation, a prisoner plaintiff must allege "(1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him."  *Mack v. Yost*, 968 F.3d 311, 322 n.12 (3d Cir. 2020) (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).  Judge Saporito concluded that the retaliation claim in this case should be dismissed because the complaint does not allege an adverse action by prison officials, Doc. 57, p. 9, and Keeling's objection does not address this conclusion.  The court will accordingly overrule this objection and dismiss Keeling's retaliation claim.

### D. Keeling's Failure to Protect Claim Is Dismissed

Keeling's fourth objection is that Judge Saporito erred in his conclusion that the failure to protect claim should be dismissed.  (Doc. 63, p. 8.)  In concluding

that the failure to protect claim should be dismissed, Judge Saporito noted that there was no allegation of any specific threat by Keeling's cellmate or any history of violence between the inmates, and therefore concluded that Defendant Josefowicz "had no reason to know prior to the incident that the cellmate was about to assault Keeling." (Doc. 57, pp. 11–12.)  Keeling argues that there is ample evidence to the contrary. (Doc. 63, p. 8.)  Specifically, Keeling cites a December 22, 2020 filing in which he asked the court to take judicial notice of a number of facts, *see* Doc. 56, as well as several declarations attached to his complaint regarding "separate occasion's [sic]" in which Keeling was "assaulted due to Unit Manager's failure to take precautionary measure's [sic] after being alerted by Plaintiff." (Doc. 63, p. 8.)

Keeling's objection fails to the extent that it asks this court to consider the evidence provided in his December 22, 2020 filing because such evidence cannot be considered in resolving the motion to dismiss.  In deciding a motion to dismiss, a district court may only consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents "integral to or explicitly relied upon in the complaint." *Doe v. Univ. of Scis.*, 961 F.3d 203, 208 (3d Cir. 2020).  Keeling's December 22, 2020 filing does not fit into any of these categories and therefore cannot be considered here.

The objection also fails to the extent that it seeks consideration of Keeling's prior declarations.  First, the docket of this case does not indicate that any declarations were actually attached to Keeling's complaint.  Second, by Keeling's own admission, the declarations pertain to prior incidents in which Keeling was allegedly assaulted and do not provide evidence that prison officials knew of the risks posed by Keeling's cellmate in this case.  Accordingly, the court will overrule Keeling's fourth objection.

### E.  Keeling's Claim Against Defendant White Is Dismissed

Although Keeling frames a section of his objections as a "sur-reply" regarding the "failure to protect claim against White," *see* Doc. 63, p. 10, Keeling does not offer any argument as to why Judge Saporito's conclusion regarding Defendant White should be rejected and instead simply notes that even if White is dismissed, White could still be "a critical plaintiff witness for a jury trial."  (*Id.* at 11.)  Accordingly, because Keeling does not appear to have any objections to the portion of the report and recommendation recommending that Defendant White be dismissed, the court will adopt that portion of the report and recommendation.

### F.  Keeling's Claim Regarding Drug Testing Will Not Be Dismissed

The court will next address Keeling's claim regarding drug testing.  In the complaint, Keeling alleges that Defendants Piskorik and Pawling subjected him to more drug screenings than he should have been subjected to under the prison's

random drug screening policy.  (Doc. 1, pp. 19–20.)  Judge Saporito concludes that

this claim should be dismissed because "state prison regulations, such as the state

department of corrections drug screening policies, do not constitute federal law,

and therefore such claims are not cognizable under 42 U.S.C. § 1983."  (Doc. 57,

p. 15.)  Keeling objects that the claims should not be dismissed because the

complaint alleges that prison staff intentionally subjected Keeling to an excessive

number of drug screenings.  (Doc. 63, pp. 11–12.)

Although Judge Saporito is correct that state prison regulations do not

constitute federal law for purposes of a § 1983 claim, the court reads Keeling's

claim as alleging selective enforcement of a prison regulation, rather than a

violation of a prison regulation, and such selective enforcement could be the basis

for a § 1983 claim.  *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005)

("[D]iscriminatory enforcement of a facially valid law is . . . unconstitutional under

the equal protection clause." (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 373–74

(1886))).  To state a § 1983 selective enforcement claim upon which relief may be

granted, a plaintiff must allege that he "was treated differently based on an

'unjustifiable standard, such as race, or religion, or some other arbitrary factor, or

to prevent the exercise of a fundamental right.'"  *Id.* (alterations omitted) (quoting

*Holder v. City of Allentown*, 987 F.2d 188, 197 (3d Cir. 1993)); *see also Verbanik*

*v. Harlow*, 512 F. App'x 120, 123 (3d Cir. 2013) (applying *Hill* in prison context).

14

In this case, Keeling alleges that in one eighteen-month period he was subjected to eight urine tests, which he alleges is significantly more times than he would be tested under a random testing system.  (Doc. 1, p. 19.)  He alleges that such drug testing was "designed as a scare tactic" to stop him from litigating a state court proceeding in the Luzerne County Court of Common Pleas.  (*Id.*)

Based on a liberal construction of Keeling's complaint, the court finds that he has stated a claim for selective enforcement of the drug screening policy in violation of the Equal Protection Clause because he has alleged that he was subjected to additional drug testing in order to prevent him from exercising his fundamental right of access to the courts.  The court will accordingly reject this portion of the report and recommendation and deny the motion to dismiss with regard to Keeling's drug testing claim.

### G. Keeling's Claim Regarding Styrofoam Food Trays Is Dismissed

Finally, Keeling objects to Judge Saporito's conclusion that the manner in which food is served in the prison does not violate the Eighth Amendment. Keeling argues that serving food on Styrofoam trays that need to be bent to fit through food slots "is a substantial deprivation" of rights and "more than a minor inconvenience for prison official's [sic] to ignore."  (Doc. 63, p. 13.)   The court agrees with Judge Saporito that this claim does not allege harm beyond "minor,

15

temporary discomfort" and will accordingly adopt Judge Saporito's recommendation and dismiss the claim.

### H. The Court Will Grant Leave to Amend as to All Dismissed Claims Other than the Food Service Claim

Having concluded that all but one of Keeling's claims will be dismissed, the court turns its attention to Judge Saporito's recommendation that the court deny leave to amend as to the dismissed claims.  (*See* Doc. 57, pp. 18–19.)  A district court must permit a curative amendment before dismissing a civil rights complaint unless amendment "would be inequitable or futile."  *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  Here, the court finds that amendment of Keeling's complaint would not be inequitable or futile with the exception of Keeling's claim regarding the manner in which food is served at SCI Dallas.  The court finds that further amendment as to the food service claim would be futile because no amendment could transform the temporary discomfort experienced by Keeling into an Eighth Amendment violation.  Accordingly, the court will grant Keeling leave to amend the complaint as to all dismissed claims other than the food service claim.

## CONCLUSION

For the foregoing reasons, Judge Saporito's report and recommendation is adopted in part and rejected in part, and Defendants' motion to dismiss is granted in part and denied in part.  An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: July 22, 2021